UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID M SNIDER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:12-cv-03508-AKK** |
| **UNITED STATES STEEL-** ) | |
| **FAIRFIELD WORKS** ) | |
| **MEDICAL DEPARTMENT,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

David M. Snider ("Snider") brings this employment discrimination action against United States Steel - Fairfield Works Medical Department ("US Steel") under the Americans with Disabilities Act of 1990 ("ADA"), ADA Amendments Act of 2008 ("ADAAA"), and Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq*. Doc. 5. US Steel now moves to dismiss Snider's complaint or, alternatively, for summary judgment. Doc. 8. The motion is fully briefed and ripe for review. Docs. 9, 16, 19. For the reasons stated below, US Steel's motion is **DENIED** as to the ADA discrimination claim (Count I), but otherwise **GRANTED**.

### I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*,556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to

2

relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

US Steel hired Snider in 1988 and by 2010 Snider made $10,000 per month as a Maintenance Technician Electrical. Doc. 5 at ¶¶ 5-7. On April 18th of that year, US Steel placed Snider on medical leave and referred him to a psychiatrist. *Id*. at ¶ 8. Accordingly, Snider met with psychologist Tony Martin, who then referred Snider to an associate psychiatrist. *Id*. However, because of that psychiatrist's schedule, Snider made an appointment instead with psychiatrist Dr. Leesha Ellis-Cox. *Id*. at ¶10. At the end of May, Dr. Ellis-Cox released Snider to return to work. *Id*. at ¶ 12. As a result, US Steel representative James Schenher forced Snider to sign an authorization form allowing Dr. Ellis-Cox to release Snider's medical records to Dr. Cheryl Szabo at US Steel. *Id*. at ¶ 14.

Despite Dr. Ellis-Cox's medical release letter, Dr. Szabo told Snider in June that, based on her communications with Dr. Ellis-Cox, Snider needed to undergo

---

[1] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, the "facts" here are taken directly from the complaint.

anger management before he could return to work. *Id*. at ¶ 15. The following month, Schenher and Dave Thompson, Hot Mill Area Coordinator, told Snider that in order to return Snider work he needed to sign a Memorandum of Understanding ("MOU") that stated "(1) that [Snider] had been deemed medically unfit for work, then chose his own medical provider, who conditionally released [Snider] to work; and (2) 'employee's current provider' has developed a long-term treatment plan to address his condition and how he interacts with others in the workplace." *Id*. at ¶ 16. The MOU ultimately provided that if Snider failed to comply with its terms, US Steel would immediately remove him from the plant. *Id*. at ¶ 17. The request triggered Bob Jones, the Grievance Committeeman of United Steelworkers Local 1013, to submit a letter to US Steel stating that "Snider has not had any discipline of any sort in the previous three years and to the best of my knowledge has not received any discipline in the last five years for any rules violation. Dr. Cheryl Szabo has a history of mis-diagnosing employee's that Local 1013 represents and we have a large file of those cases on hand." *Id*. at ¶ 18.

On August 11, 2010, Snider filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that US Steel had discriminated against him on the basis of a perceived disability in violation of the ADA:

I am a White male. My employer perceived that I have a disability. I

4

> was employed as an electronic repairman with the above named employer. On April 9, 2010, I was asked to work at a work location which I considered to be unsafe. After meeting with labor relations area supervisor and grievance committeeman, I was referred to the company medical doctor on the next day. The medical doctor referred me to EAS and I was unknowingly placed on medical leave. On April 18, 2010, I reported to work for my regular shift and was told that I had been placed on medical leave.

Doc. 5-1 at 1.

In September, Snider received an anger management certificate of completion. Doc. 5 at ¶19. The following month, Dr. Ellis-Cox wrote a second medical release letter stating that Snider could return to work with no restrictions. *Id*. at ¶ 20. However, Schenher again forced Snider to sign a medical release form allowing Dr. Szabo to review his medical records from Dr. Ellis-Cox. *Id*. at ¶ 21. In January 2011, Schenher sent a letter to Bob Jones stating "If U.S. Steel, The United Steelworker's Union, and Mr. Snider can reach an agreement resolving the current grievances, complaints, and any other charges relating to the events of April 2010, in full and final settlement, then I believe we can resolve this matter and return Mr. Snider to work." *Id*. at ¶ 22. A week later, Snider learned that US Steel cancelled his medical insurance, but the subsequent week, on February 4, 2011, US Steel allowed Snider to return to work. *Id*. at ¶¶ 23, 26.

## III. ANALYSIS

Snider asserts claims under the ADA and ADAAA for disability based discrimination and under Title VII for retaliation and hostile work environment. *See* doc. 5. US Steel contends that these claims are due to be dismissed because the ADAAA does not establish a cause of action separate from the ADA and because Snider failed to exhaust his administrative remedies or properly state a claim for relief. *See* doc. 9. The court discusses each contention below.

**A.     The ADA Amendments Act of 2008**

The court agrees that the ADAAA, which was enacted by Congress in 2008 to "reinstat[e] a broad scope of protection to be available *under the ADA*[,]" PL 110-325, September 25, 2008, 122 Stat. 2553, at Section 2(b)(1) (emphasis added), does not establish a cause of action separate from the ADA.  The ADAAA merely broadens the scope of protection available to plaintiffs under the ADA by redefining particular terms such as "disability" and "major life activities." *Id*. at section 4.  Accordingly, the proper cause of action still exists under the ADA. Therefore, the court will treat Count 1 as a claim under the ADA, as amended by the broadened scope of coverage of the ADAAA, and US Steel's motion to dismiss Count 2 is **GRANTED**.

B.   **The Americans with Disabilities Act**

In Count 1, Snider alleges that US Steel discriminated against him based on a perceived disability.  Doc. 5 at ¶ 50.  To adequately state a claim under the ADA, "the plaintiff must first establish a *prima facie* case of discrimination . . . by showing (1) he is disabled, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability." *Dulaney v. Miami-Dade Cnty*, 481 F. App'x 486, 489 (11th Cir. 2012).  In light of the ADAAA, a plaintiff may also satisfy the first prong by showing that he is "regarded as having such an impairment [that substantially limits one or more of the major life activities of such individual].  This means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.'" 29 C.F.R. § 1630.2(g)(1)(iii).

US Steel contends that Snider cannot establish that he is a "qualified individual."  Doc. 9 at 9.  However, this argument requires the court to look beyond the face of the complaint and the court declines to do so since Snider has not had adequate time to conduct discovery on his claim and this analysis is more appropriate at the summary judgment stage.  *See* section D, *infra*.  US Steel contends also that Snider's claim fails because he was not subjected to

discrimination based on his perceived disability.  Doc. 9 at 10.  However, Snider alleges that US Steel denied some of his sickness and accident benefits, cancelled his medical insurance, and refused to allow him to return to work because of his perceived disability.  *See* doc. 5 at 9-10. Whether Snider will ultimately succeed on his claim is not for the court to determine at this juncture.  Rather, the court is tasked solely with ascertaining whether Snider has pled a plausible claim.  *See Iqbal*,556 U.S. at 678.  Snider has and, accordingly, US Steel's motion to dismiss the discrimination claim in Count 1 is **DENIED**.

Additionally, since Count 1 arguably states a retaliation claim under the ADA, *see* doc. 5 at ¶ 47 ("Plaintiff was not allowed to return to work in retaliation of his filing a grievance."), the court also construes US Steel's arguments against Snider's Title VII retaliation as applicable to the ADA retaliation claim.  Specifically, US Steel contends that Snider failed to exhaust his administrative remedies or to properly plead a claim for retaliation.  With respect to the first contention, a plaintiff asserting a claim under the ADA "must comply with the same procedural requirements to sue under Title VII, and thus, a timely EEOC charge is required[.]"  *Houston v. Army Fleet Servs*., LLC, 509 F. Supp. 2d 1033, 1039 (M.D. Ala. 2007) (citing *Fry v. Muscogee Cnty Sch. Dist*., 150 F. App'x 980, 981-2, 2005 WL 2596880, at *1 (11th Cir. 2005)).  However, this requirement is

not strictly construed and the judicial complaint may encompass any claims "which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *see also Gregory v. Ga. Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir.2004).

In this case, Snider indicated in his EEOC charge that US Steel placed him on leave after he objected to working "at a work location which [he] considered to be unsafe." Doc. 5-1 at 1. Refusing to work in a purported unsafe area is not the same as engaging in protected activity as that term is used under the ADA. Accordingly, the resulting EEOC investigation would not reasonably have encompassed a claim that US Steel placed Snider on medical leave in retaliation for his exercise of protected activity. Therefore, the court finds that Snider failed to properly exhausted his administrative remedies for his retaliation claim and US Steel's motion to dismiss this portion of Count 1 is **GRANTED**.

C.   **Retaliation & Hostile Work Environment Under Title VII**

In Count 3, Snider pleads claims for retaliation and hostile work environment under Title VII. However, Title VII is limited to discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a), and Snider failed to allege discrimination based on any of these protected characteristics, *see* doc. 5. In fact, Snider's complaint only raises allegations of

disability based discrimination. Moreover, even if Snider properly alleged a Title VII claim, he failed to exhaust his administrative remedies because his EEOC charge is limited to the ADA and only asserts facts related to disability based discrimination. *See* doc. 5-1 at 1. Accordingly, US Steel's motion to dismiss Count 3 is **GRANTED**.

**D.**     **Alternative Motion for Summary Judgment**

US Steel alternatively moves for summary judgment and attaches evidentiary material purportedly establishing that Snider's claims fail. *See* doc. 9. However, "[a]s a general rule summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989). In this case, US Steel filed its motion before Snider had an opportunity to conduct any discovery regarding his ADA claims. Accordingly, US Steel's alternative motion is **DENIED** as premature, without prejudice to it filing a renewed motion at the appropriate juncture.

## IV. CONCLUSION

For the reasons stated above, US Steel's motion is **GRANTED** as to Counts 2 and 3, **GRANTED in part** as to the retaliation claim in Count 1, and **DENIED** as to the ADA discrimination claim in Count 1. Accordingly, Snider's ADA

retaliation and Title VII claims are **DISMISSED**.

**DONE** this 26th day of March, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE